IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| v. | : | |
| **GERTRUDIS RODRIGUEZ-JIMENEZ** | : | **NO. 07-352-3** |

## MEMORANDUM

PRATTER, J.                                                                                                               JANUARY 12, 2010

      Attended by two attorneys and a Spanish language interpreter, Gertrudis Rodriguez-Jimenez pled guilty to five counts of violating federal narcotics and related laws on May 8, 2009, the day on which his trial on those various charges was to start. As contemplated by Rule 11 of the Federal Rules of Criminal Procedure, the Court closely, and in considerable detail, questioned Mr. Rodriguez-Jimenez about his awareness of his rights, his appreciation of the nature of the charges levied against him, his intention to plead guilty even though the Government was unwilling to enter into any plea agreement with him, his full acknowledgment of the maximum length of incarceration and other potential sentencing features to which he was exposed by pleading guilty, and his admission of all the facts forming the basis for his guilty plea.

      At the start of the May 8, 2009 guilty plea hearing, Mr. Rodriguez-Jimenez confirmed that he understood he was under oath, meaning that he had given his word to tell the truth. He also confirmed that he had the benefit of counsel of his choice, with whose representation and advice he was satisfied. Mr. Rodriguez-Jimenez also assured the Court that he fully understood

that by pleading guilty he was waiving and renouncing numerous rights and potential rights. At the conclusion of the lengthy hearing, Mr. Rodriguez-Jimenez entered a guilty plea because, he acknowledged, he was in fact guilty as charged. He declined the proffered opportunity to speak to the Court to contradict, modify, explain or correct any of the statements made to the Court by any attorney or by Mr. Rodriguez-Jimenez himself as part of the Court's inquiry into the efficacy of the guilty plea. Specifically, in response to the Court's invitation to explain or contradict what had been presented to the Court, Mr. Rodriguez-Jimenez declined and stated "Everything is fine".

Some seven months later, it seems everything was not "fine" according to Mr. Rodriguez-Jimenez. He prevailed upon his attorney to move pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure to withdraw his guilty plea rather than to proceed with sentencing. The Government opposed the Motion and, on December 14, 2009, the Court conducted an evidentiary hearing at which Mr. Rodriguez-Jimenez was again aided by an interpreter and by counsel.

The substance of Mr. Rodriguez-Jimenez's claim is that he pled guilty because (1) Government agents were supposedly disturbing his wife and (2) his counsel "misrepresented" the sentencing guideline range to which Mr. Rodriguez-Jimenez was exposed. In his affidavit supporting his motion, this latter reason was the only basis upon which he sought to withdraw his plea. As an excuse, it flies in the face of the Court's own questioning of Mr. Rodriguez-Jimenez at his plea hearing that he understood he was subject to mandatory 10 year minimum periods of imprisonment as part of his sentence, but could be sentenced for up to his whole life in prison, together with up to 6 years of supervised release upon being released from prison and imposition

of a fine for as much as $10,250.00. In addition, Mr. Rodriguez-Jimenez was reminded that he remained at risk for possible deportation. At his guilty plea hearing neither Mr. Rodriguez-Jimenez nor any of his attorneys took any exception to the description of possible punishments for which he was at risk with a guilty plea. Mr. Rodriguez-Jimenez also admitted at the guilty plea hearing that he knew that the Court retained the full discretion to make the final decisions concerning what his sentence would be. With respect to the alleged harassment of his wife, Mr. Rodriguez-Jimenez's presentation was wholly unpersuasive whereas the officer who interacted with Mr. Rodriguez-Jimenez's wife described an entirely appropriate, non-threatening communication. Mr. Rodriguez-Jimenez offered no contradictory evidence.

As a reason to withdraw his guilty plea, he also continued to object to the Government's refusal to pursue law enforcement "leads" that he has persisted in claiming to have provided to the Government. Mr. Rodriguez-Jimenez [1], as well as one of his attorneys, Andres Jalon[2], testified at the hearing, as did two law enforcement agents who dealt with the investigation of Mr. Rodriguez-Jimenez's crimes and his purported "leads." For direct examination, Mr.

---

[1] Even before the hearing started, the Court and counsel all took specific steps to underscore for Mr. Rodriguez-Jimenez how challenging a motion to withdraw a guilty plea can be. In particular, Mr. Rodriguez-Jimenez was cautioned to assess the magnitude of his prior sworn statements to the Court about his guilt and his exercise of free will in entering the guilty plea. Indeed, the Court highlighted for Mr. Rodriguez-Jimenez the risk of admitting during his testimony to the commission of perjury. Mr. Rodriguez-Jimenez ultimately exercised his Fifth Amendment rights in that regard.

[2] Mr. Jalon testified at the Court's invitation because Mr. Rodriguez-Jimenez testified that Mr. Jalon had said to him prior to his guilty plea hearing "that the judge is paid by the government and that the judge would be on the side of the government ." The Court provided Mr. Jalon the opportunity to clarify the record as to a possible violation by him of Rule 8.2(a) of the Pennsylvania Rules of Professional Conduct. Mr. Jalon unequivocally denied making any such statement as attributed to him by Mr. Rodriguez-Jimenez. The Court found Mr. Jalon entirely credible on this point..

Rodriguez-Jimenez preferred to rest on his affidavit, supplemented by live testimony and, of course, by cross examination. Much of what Mr. Rodriguez-Jimenez had to say was unrelated to the issue of his guilty plea; other parts of his testimony were inherently contradictory. For example, at one point Mr. Rodriguez-Jimenez testified that he pled guilty because he was relying on a statement by the Government's counsel in the Court's presence that Mr. Rodriguez-Jimenez's sentence would be no greater than 45 months, but no such statement appears on any transcript of any court proceeding in this case, all of which had been reported from start to finish in keeping with the Court's practice. Moreover, Mr. Rodriguez-Jimenez's repeated objections that he expected a low sentencing guideline range are puzzling inasmuch as the guilty plea hearing colloquy addressed in considerable specific detail not only what his guideline range likely would be, but also cautioned Mr. Rodriguez-Jimenez that only the Court - - not counsel and not the draftsman of the Pre-Sentence Report - - could determine the sentencing guideline range for his case. Mr. Rodriguez-Jimenez was also reminded that whatever the guideline range turned out to be, the Court retained the discretion to set a fair and reasonable sentence, above or below the range.

Following the full evidentiary hearing, the Court denied the motion, explaining that Mr. Rodriguez-Jimenez had fallen far short of meeting his substantial burdens under Federal Rule of Criminal Procedure 11(d) to demonstrate a "fair and just" reason to withdraw his guilty plea. United States v. Jones, 336 F.3d 245, 252 (3rd Cir. 2003), citing United States v. Hyde, 520 U.S. 670, 676-77 (1997). On the contrary, when considered through the prism of his unconvincing excuses for having undertaken the effort to withdraw his guilty plea, it is not difficult to view Mr. Rodriguez-Jimenez's motion as indicative of his refusal to acknowledge his guilty plea as a

4

"grave and solemn act," Brody v. United States, 397 U.S. 742, 748 (1970). Indeed, given that he has taken diametrically opposed positions in court, under oath on each occasion, on a matter of singular importance, and also has cast aspersions on his counsel for his own misperceived convenience and without regard for the integrity of the judicial system, Mr. Rodriguez-Jimenez has shown a disturbing lack of regard for truth.

Pursuant to United States v. Brown, 250 F.3d 811 (3rd Cir. 2001), the Court has considered (1) whether Mr. Rodriguez-Jimenez actually asserted his innocence; (2) whether the Government would be prejudiced by the withdrawal of the plea; and (3) the strength of his reasons for withdrawing his guilty plea. The Court has found Mr. Rodriguez-Jimenez's presentation meager and disingenuous at best. With respect to his newly avowed claim of innocence, Mr. Rodriguez-Jimenez has provided no record facts to "buttress" any such assertion with any recognizable defense. United States v. Brown, 250 F.3d at 818. His excuses for having taken numerous contradictory positions under oath at his guilty plea hearing as compared to his new story were, to say the least, unpersuasive and disrespectful, not only of the Court, but of his own character and the value of his word. Moreover, his latest reasons for pleading guilty - - and his reasons for wanting to withdraw that plea - - are simply not credible. Thus, the Court has not deemed it necessary to analyze whether the Government would be improperly prejudiced by a withdrawal of the plea.

Accordingly, although Mr. Rodriguez-Jimenez may now regret the consequences of his own knowing and voluntary actions, the Court has no doubt that at the time he entered his guilty plea he did so with a full appreciation of the import of his actions, admitting all the facts attendant to the elements of the crimes with which he was charged. Therefore, Mr. Rodriguez-

Jimenez's Motion is **DENIED**, and an Order to that effect confirming the Order entered orally on December 14, 2009 follows.

BY THE COURT

GENE E.K. PRATTER
*United States District Judge*